UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| RONALD GRANT SPIRES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:17-CV-403-JRG-HBG |
| ) | |
| BLOUNT COUNTY SHERIFF'S OFFICE ) | |
| and SOUTHERN HEALTH PARTNERS, ) | |
| INC., ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This is a civil rights suit filed by pro se plaintiff Ronald Grant Spires pursuant to 42 U.S.C. § 1983. Plaintiff alleges that defendants Blount County Sheriff's Office and Southern Health Partners, Inc. were acting deliberately indifferent to his medical needs, with additional state law claims for alleged health care liability [Doc. 1-1]. Now before the Court is defendant Southern Health Partners, Inc.'s ("SHP") motion to dismiss [Doc. 4]. For the reasons set forth below, the Court will **DENY in part** and **GRANT in part** SHP's motion and this action shall proceed against SHP.

**I.     PROCEDURAL BACKGROUND**

On August 4, 2017, Plaintiff filed a Complaint in the Circuit Court for Blount, County, Tennessee, at Maryville, against Blount County Sheriff's Office and SHP [Doc. 1-1]. With the consent of co-Defendant, SHP filed a Notice of Removal to remove this action from the Blount

County Circuit Court to this Court pursuant to 28 U.S.C. § 1441 [Doc. 1]. On September 11, 2017, SHP filed a motion to dismiss for failure to state a claim upon which relief may be granted [Doc. 4]. Within his memorandum in support thereof, SHP argues:

1. Plaintiff's Eight Amendment claim is not pleaded against SHP and, even if it were, the Complaint fails to allege facts to show that SHP had an unlawful policy or custom with regard to the "pickle suit"; and

2. The negligence claims against SHP constitute health care liability claims under Tennessee law, and should be dismissed with prejudice because Plaintiff failed to file a certificate of good faith with the Complaint as required under the Tennessee Health Care Liability Act.

[Doc. 4 p. 1].

Plaintiff has not filed a response in opposition to Plaintiff's motion to dismiss and the time for doing so has passed. *See* E.D. Tenn. L.R. 7.1(a), 7.2. In this Court, failure to respond to a motion "may be deemed a waiver to any opposition to the relief sought." E.D. Tenn. L.R. 7.2.

## II.   FACTUAL BACKGROUND

On August 15, 2016, Petitioner was released from the Ridgeview Mental Health facility in Oak Ridge, Tennessee, and transferred to Blount County Jail [Doc. 1-1 at 7]. Upon arrival at the Blount County Jail, Plaintiff was placed on "suicide watch" and "was to be checked on every fifteen minutes of it's [sic] duration" [*Id*. at 8]. He turned over all of his personal property, including his clothes, and was made to wear "a green garment made of thick, course material commonly referred to as a 'pickle suit'" [*Id*. at 7]. He was also given a blanket made of the same material [*Id*.].

Plaintiff alleges that the "pickle suit" and blanket provided to him was covered with a "chemical weapon spray" [*Id*.]. Plaintiff claims to have recognized the chemical spray because he "is professionally certified in the use of numerous chemical weapons including ones used by Blount County Sheriff's Office personell [sic]" [*Id*.]. Physical contact with the material "caused

2

burning of the skin, nose and eyes as well as significant coughing [sic] and sinus issues" [*Id*.]. Although Plaintiff was required to wear the "pickle suit" for three days, he claims that his symptoms "continued for the duration span of five days" [*Id*.].

Plaintiff asserts that on August 16, 2016, he "received a head injury" while sleeping [*Id*. at 8]. Plaintiff alleges that "[u]pon waking[,] [he] was unable to move and had no feeling in his body" [*Id*.]. After approximately fifteen minutes of yelling for assistance, an officer responded to Plaintiff [*Id*]. Plaintiff alleges that the officer told him to "shut up" and accused Plaintiff of faking his symptoms [*Id*.]. Plaintiff asserts that he continued yelling for assistance for another twenty minutes until "officers, the nurse, and Sargent Ford responded" [*Id*.]. Again, the officers accused Plaintiff of faking his condition [*Id*.].

A female officer reviewed a video of Plaintiff's confinement and announced that Plaintiff was not faking [*Id*.]. A nurse "used a needle to poke [Plaintiff's] toe and got no response" [*Id*.]. The nurse "then checked his temperature and blood pressure" and acknowledged his low temperature [*Id*.]. The nurse helped Plaintiff to an upright position, at which point Plaintiff "began to recover sensation" [*Id*.]. At this time, Plaintiff complained of "blurred vision and ringing ears and was taken to the medical unit" [*Id*.]. Plaintiff requested to be taken to the hospital for testing and treatment but "was told by the nurse 'you probably just have a concussion'" [*Id*. at 9].

On the following day, Plaintiff was taken back to the medical unit to be assessed by the psychologist [*Id*.]. After assessing Plaintiff, the psychologist "stated [Plaintiff] should not have been placed on suicide watch" and allowed Plaintiff "to change out of the 'pickle suit' and into standard jail uniform" [*Id*.]. After numerous requests, Plaintiff was allowed to take a shower on August 18, 2016 [*Id*.].

The Complaint further alleges that during his incarceration, SHP staff administered Plaintiff medications prescribed by his primary care physician and psychiatrist [*Id*. at 9]. On six separate occasions, unidentified SHP staff gave Plaintiff medications that were not prescribed for him [*Id*.]. On the evening of December 13, 2016, Plaintiff alleges that he fell unconscious in the presence of Officer Smith and a SHP employee named David [*Id*.]. David "pronounced the [Plaintiff's] pupils to be 'fixed and dialated [sic]' and heart rate in the twenties" [*Id*. at 10]. David instructed Plaintiff be taken to Blount Memorial Hospital by ambulance for treatment [*Id*.].

In February 2017, Plaintiff alleges that he was again given another inmate's medication [*Id*.]. Plaintiff decided to stop taking his medication "although this created a hardship both physically and psychologically"[1] [*Id*.].

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal standard, requiring only " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do," neither will " 'naked assertion[s]' devoid of 'further factual enhancement[,]' " nor "an unadorned, the-

---

[1] This claim contradicts Plaintiff's statement presented in the "Grounds and Argument" section in his Complaint where he alleges "[SHP] staff members did abruptly cease administration of [Plaintiff's] medications prescribed by his psychiatrist, disregarding warnings about doing so. Thus causing physical, psychological and emotional harm to the [Plaintiff]" [Doc. 1-1 at 12].

4

defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

When faced with a Rule 12(b)(6) motion, courts must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Id.* at 679.

Pro se litigants "are held to less stringent [pleading] standards than . . . lawyers in the sense that a pro se complaint will be liberally construed in determining whether it fails to state a claim upon which relief could be granted." *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972). Yet, this Court's "lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). "Neither [this] Court nor other courts . . . have been willing to abrogate basic pleading essentials in pro se suits." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

## IV. ANALYSIS OF EIGHTH AMENDMENT CLAIMS

Section 1983 prohibits any "person[2] who, under color of any statute, ordinance, regulation, custom, or usage, of any State" from depriving any U.S. citizen "of any rights, privileges, or immunities secured by the constitution and laws." Plaintiff argues that his Eighth Amendment right under the United States Constitution was violated. The Eighth Amendment proscribes the unnecessary and wanton infliction of pain against prisoners. *See, e.g., Whitley v. Albers*, 475 U.S. 312, 319 (1986). To make a claim under the Eighth Amendment, the prisoner must satisfy both an objective and a subjective component. *See, e.g., Moore v. Holbrook,* 2 F.3d 697, 700 (6th Cir. 1993). The subjective component focuses on the state of mind of the prison officials. The relevant inquiry is "whether [the defendant's action] was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (internal quotation marks omitted). The objective component requires the pain inflicted to be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

In his Complaint, Plaintiff asserts the following Eighth Amendment violation:

> Respondant [sic] did violate [Plaintiff's] [E]ight [A]mendment rights under the [C]onstitution of the United States by placing him in a garment contaminated by a chemical agent that caused physical pain. This was done willfully and with malicious intent by agents of the [R]espondant [sic]. This action also caused psychological distress to the petitioner who was already diagnosed and being treated for Post Traumatic Stress Disorder (PTSD) and depression by creating a reasonable fear of the people who would be supervising and have control of him[.]

---

[2] SHP is the entity responsible for providing medical care to inmates at the Blount County Jail, and, therefore, a "person" acting under color of state law and subject to liability under § 1983. *See, e.g.*, *West v. Atkins*, 487 U.S. 42, 56 (1998) (holding that a private medical provider contracted to provide medical care to prisoners is a state actor for purposes of § 1983). The Sixth Circuit has held that the same analysis which applies to a § 1983 claim against a municipality applies to a § 1983 claim against a private corporation, such as SHP. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).

[Doc. 1-1 at 11].

SHP claims that Plaintiff's Complaint fails to state a claim for relief because his Eighth Amendment claim is not pleaded against SHP and, even if it were, the Complaint fails to allege facts to show that SHP had an unlawful policy or custom with regard to the pickle suit [Doc. 5 at 6]. As such, SHP argues Plaintiff's Eighth Amendment allegation should be denied and SHP should be dismissed as a defendant in this action.

### A.  Constitutional Violations Not Pled Against SHP

First, Plaintiff alleges that his Eighth Amendment rights were violated by placing him in the "pickle suit"; however, SHP argues that Plaintiff does not allege that any SHP employee placed him in that suit [*Id*. at 7]. Without specific allegations that a SHP employee was involved with the alleged use of the "pickle suit" and blanket, or the alleged placement of Plaintiff in the "pickle suit," SHP argues Plaintiff has failed to state a claim against SHP [*Id*.].

In support thereof, SHP discerns that Plaintiff pleads this claim with reference to a singular noun, "respondant [sic]" [*Id*.]. In contrast, in the following paragraphs of the Complaint, where Plaintiff pleads his claims for inadequate medical care, Plaintiff refers to the "respondants [sic]" in the plural [*Id*.]. SHP states that the Complaint specifically refers to SHP with regard to the medical claims, but not with regard to the Eighth Amendment Claim [*Id*. at 9]. Thus, SHP argues that the singular form of "respondent" in Plaintiff's allegations concerning his placement in the "pickle suit" insinuates Plaintiff's allegations are directed only to Blount County Sheriff's Office and not SHP.

However, at this early stage in proceedings, given the factual allegations offered in this pro se prisoner's pleading and the indulgence with which it must be viewed, the Court finds that

7

dismissal based on the singular, rather than plural, use of the word "Respondent" is not enough to imply that Plaintiff did not address SHP in his allegation regarding the "pickle suit".

**B.     *De Minimis* Injury**

Plaintiff was placed on suicide watch and ordered to wear a "pickle suit" for three days. SHP next argues that Plaintiff's claims must be dismissed based upon Plaintiff's failure to demonstrate more than a "*de minimis*" physical injury due to the use of the "pickle suit" and blanket; nor did he allege that he requested medical treatment from any SHP employee for the alleged injuries caused by the pickle suit [Doc. 5 at 8]. SHP argues, "[e]ven if Plaintiff had made an allegation of a sufficient injury, an inmate must present 'verifying medical evidence' to establish the detrimental effect of the delay or refusal in medical treatment" [*Id*.]. SHP contends that, absent verifying medical evidence to establish that any detrimental effect occurred because of any alleged delay or refusal of treatment, this case should be dismissed [*Id*.].

The law has long been that "a violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury." *Horn by Parks v. Madison County Fiscal Court*, 22 F.3d 653, 659 (6th Cir. 1994); *see also Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305–08 (1986). Under the Prison Litigation Reform Act, lawsuits brought by institutionalized persons require a "physical" injury in order to permit recovery: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Moreover, in interpreting this statute against prisoners' complaints, courts have required that the injury be more than *de minimis*. This "contextual" inquiry is "responsive to contemporary standards of decency." *Hudson,* 503 U.S. at 8–9 (internal citation and quotation marks omitted).

In his Complaint, Plaintiff alleges that the "pickle suit" was covered in a chemical causing him physical pain [Doc. 1-1 at 7]. Specifically, Plaintiff complains of burning of his skin, nose, and eyes, as well as significant coughing and sinus issues [*Id*.]. Plaintiff alleges these symptoms continued for five days [*Id*.]. He also alleges that he was previously treated for Post Traumatic Stress Disorder and depression, and claims that his time in the "pickle suit" caused additional psychological distress [*Id*.].

SHP's argument presents the antecedent question of what a plaintiff must plead in order to state a claim. As previously stated, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Conley v. Gibson*, 355 U.S. 41, 47 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. *Twombly*, 550 U.S. at 545. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of inadequate medical treatment. The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) injury reflects Rule 8(a)(2)'s threshold requirement that the "plain statement" possess enough heft to show that the pleader is entitled to relief.

This Court finds that Plaintiff has met the initial pleading requirements as set forth in the Federal Rules of Civil Procedure. Accordingly, the extent of Plaintiff's injuries provide no basis

for dismissal of his § 1983 claims at this stage. Similarly, although an inmate who complains that inadequate medical treatment rose to a constitutional violation must place verifying medical evidence in the record, *see Rhinehart v. Scutt*, 894 F.3d 721 (6th Cir. 2018), this Court finds that at this early stage in litigation, there is no need for such evidence in the record.

### C. Failure to State a Specific Policy and/or Procedure

In the present case, Plaintiff has not sued any employee of SHP. Entities, such as SHP, may not be held liable under § 1983 through a respondeat superior theory of recovery simply on the basis that they employ tortfeasors. *Monell*, 436 U.S. at 690. Instead, a municipality or other governmental entity can be held responsible for an alleged constitutional deprivation only if there is a direct causal link between a policy or custom of the entity and the alleged constitutional violation. *Id.* at 694; *see also Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005) ("Like a municipality, a government contractor cannot be held liable on a *respondeat superior* theory . . . [A] private contractor is liable for a policy or custom of that private contractor . . ."). Thus, to establish § 1983 liability on the part of an entity, a plaintiff must "identify the policy, connect the policy to [the entity] and show that the particular injury was incurred because of the execution of that policy." *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994) (internal quotation marks and citation omitted).

SHP argues that Plaintiff failed to allege his injuries were the result of some policy or custom attributable to SHP [Doc. 5 at 9]. However, the Court finds that Plaintiff's pro se Complaint can be read to allege that SHP has a policy or custom of forcing inmates placed on suicide watch to wear a "pickle suit" and that the implementation of this unconstitutional policy resulted in physical injury. Therefore, liberally construing Plaintiff's Complaint, Plaintiff has alleged the existence of facts suggestive of a policy or custom of SHP, and that the violation of

10

Plaintiff's constitutional rights occurred because of that policy. Of course, the Court is unable to determine whether Plaintiff ultimately will prevail on this Eighth Amendment claim, as all of the facts are unclear at this early stage of the proceedings.

## V. Analysis of Negligence Claims

SHP has moved to dismiss the state law claims against it on the grounds that these claims are essentially health care liability claims and Plaintiff has failed to comply with the requirements of Tennessee Code Annotated §§ 29–26–122 and 29–26–121 [Doc. 5]. As noted above, Plaintiff has not responded to this motion.

Tennessee law defines a "health care liability action" as "any civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based." Tenn. Code Ann. § 29–26–101(a)(1). Further, "health care services" are defined to include "care by health care providers, which includes care by physicians, nurses, licensed practical nurses, . . . certified nursing assistants, advance practice nurses, physician assistants, nursing technicians and other agents, employees and representatives of the provider, and also includes staffing, custodial or basic care . . . and similar patient services." Tenn. Code Ann. § 29–26–101(b). Notably, the statute also provides that "[a]ny such civil action or claim is subject to this part regardless of any other claims, causes of action, or theories of liability alleged in the complaint." Tenn. Code Ann. § 29–26–101(c).

The claims alleged against SHP in the "Grounds and Arguments" section in Plaintiff's Complaint are expressly pleaded as negligence claims. Plaintiff alleges the following:

- Negligent Medical Monitoring
    - "Negligence by both respondants [sic] by allowing physical injury to [Plaintiff] while presumably under strict observation of suicide watch."

11

- Negligent Administration/Discontinuation of Medications
  - "Also, negligence by abruptly stopping administration of medications prescribed to prevent possibility of injury. This was done in blatent [sic] disregard to manufacturer's warnings against abruptly ceasing the medications."
  - "[SHP] staff members did abruptly cease administration of [Plaintiff's] medications prescribed by his psychiatrist, disregarding warnings about doing so. Thus causing physical, psychological and emotional harm to [Plaintiff]."
  - "[SHP] staff members did on six separate occasions administer to [Plaintiff] medications meant for another inmate. This causing physical and psychological harm to [Plaintiff]."
  - "On December 13, 2016 a [SHP] staff member administered to [Plaintiff] medication other than that prescribed to him. This resulted in serious bodily harm causing imminent possibility and gear of death."
  - "The aforementioned instances of negligence caused [Plaintiff] to deem necessary an end to his medication regiment. This for his personal safety. And causing physical, psychological and emotional harm."

- Negligent Care for Alleged Head Injury
  - "Negligence in providing adequate medical care of a head injury, absence of any diagnostic testing for injury. Disregarding symptoms caused and that are still ongoing since the injury."

[Doc. 1-1 at 11-12]. Based on the above, this Court can conclude that Plaintiff has alleged claims concerning the provision of or failure to provide health care services to Plaintiff and that those are "health care liability claims" covered by Tennessee Code Annotated § 29–26–101 *et seq.*, regardless of the labels applied to those claims.

The statute requires that "[i]n any health care liability action in which expert testimony is required by § 29–26–115, the plaintiff or plaintiff's counsel shall file a certificate of good faith with the complaint." Tenn. Code Ann. § 29–26–122(a). The certificate of good faith must state that the plaintiff or plaintiff's counsel has consulted with a competent expert who believes, based on the available medical records, that there is a good faith basis to maintain the action. Tenn. Code Ann. § 29–26–122(a)(1) & (2). The failure to provide a certificate of good faith "shall, upon motion, make the action subject to dismissal with prejudice." Tenn. Code Ann. § 29–26–122(c).

In the absence of any proof or argument to the contrary, the Court concludes that Plaintiff's claims of SHP's failure to assess or provide adequate care, and failure to properly administer medications and discontinue medications are not within the knowledge of ordinary laymen and would require expert testimony. *See Mitchell v. Tennova Healthcare*, No. 3:13–CV–364, 2014 WL 1154233, at *6 (E.D. Tenn. Mar. 21, 2014); *Miller v. Monroe Cnty., Tenn.*, No. 3:09–CV–85, 2010 WL 1427298, at *4 (E.D. Tenn. April 7, 2010). It is undisputed that Plaintiff did not file a certificate of good faith with his Complaint or provide any explanation for his failure to do so.

Further, the statute requires that a person "asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability." Tenn. Code Ann. § 29–26–121(a)(1). A complaint for health care liability must state whether the party has complied with the 60–day notice provision and must provide documentation of the notice. Tenn. Code Ann. § 29–26–121(b). It is undisputed that the Complaint contains no allegations concerning the 60–day notice requirement and Plaintiff has supplied no information to suggest that such notice was given, nor provided an "extraordinary cause" to excuse the failure to provide such notice. *Id.*

The Tennessee Supreme Court has unequivocally stated that the use of the term "shall" in both the certificate of good faith requirement and the pre-suit notice requirement "indicates that the legislature intended the requirements to be mandatory, not directory." *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 308 (Tenn. 2012). "We hold that the statutory requirements that a plaintiff give sixty days pre-suit notice and file a certificate of good faith with the complaint are mandatory requirements and not subject to substantial compliance." *Id.* at 304. Thus, Plaintiff's failure to satisfy these statutory requirements mandates a dismissal with prejudice. *See id.*

Accordingly, SHP's motion to dismiss will be **GRANTED** as to Plaintiff's state law claims of negligence.

## VI. CONCLUSION

Giving due regard to Petitioner's status as a pro se litigant, this Court finds that the Complaint contains sufficient factual averments that, if true, "state a claim to relief that is plausible on its face" under the Eighth Amendment. As such, Defendant, SHP's motion to dismiss [Doc. 4] is **DENIED in part** as to the alleged Eighth Amendment violations. However, SHP's motion to dismiss [Doc. 4] is **GRANTED in part** as to the alleged state law claims of negligence.

**IT IS SO ORDERED.**

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
